### BORDEN'S CONDENSED MILK CO. v. LOUISIANA PURCHASE EXPOSITION CO.

(Circuit Court of Appeals, Eighth Circuit. March 27, 1908.)

#### No. 2,445.

EQUITY—JURISDICTION—REVIEW OF ACTION OF SPECIAL TRIBUNAL—AWARD BY EXPOSITION JURY.

Under the rules and regulations adopted and promulgated by the Louisiana Purchase Exposition Company for the government of exhibitors and the making of awards, which created a superior jury, with power to finally pass upon the recommendations of department and group juries and to make awards after notice to exhibitors affected and an opportunity to be heard, an award so made after a full hearing is conclusive, and cannot be reviewed by the courts, unless some ground of equitable jurisdiction, such as fraud, accident, or mistake, is shown; nor can the company be compelled to change its records or enjoined from publishing the true purport of its proceedings at suit of an exhibitor.

Appeal from the Circuit Court of the United States for the Eastern District of Missouri.

Frederick N. Judson, for appellant.

Franklin Ferriss (Nathaniel S. Brown, on the brief), for appellee.

Before HOOK, Circuit Judge, and PHILIPS, District Judge.

HOOK, Circuit Judge. This is an appeal from a decree dismissing the bill of complaint of the Borden's Condensed Milk Company against the Louisiana Purchase Exposition Company to establish an award for a collective exhibit of its products and to annul and enjoin the publication of a separate award for a member of the collection.

The Exposition Company, in connection with a commission organized under an act of Congress, conducted the Exposition at St. Louis, Mo., in 1904, held in commemoration of the purchase of the Louisiana Territory. Rules and regulations for the conduct of the exposition, the government of exhibitors, and the making of awards were promulgated by the Exposition Company and approved by the commission. A system of classification into departments and subordinate groups and classes was adopted for the exhibits. One of the great departments was that of Agriculture, and among the groups composing it were No. 85, relating to animal food products, and No. 87, relating to farinaceous products and their derivatives. Each group was in turn subdivided into minor classes. There were also provisions for the examination of the exhibits by juries and a system of

awards of merit indicated by diplomas of four classes: Grand prizes, gold medals, silver medals, and bronze medals. A decimal scale was used in judging the exhibits, in which 100 points indicated perfection, and the points were apportioned among various matters, some of which had no relation to the intrinsic excellence or worth of the articles exhibited. A scale of markings determined the standard attained, thus, for example, a marking of from 75 to 84 points, inclusive, entitled an exhibit to a bronze medal, the lowest award. There were group juries, department juries, and one superior jury. It was the duty of a group jury to examine the competing exhibits in the group to which it was assigned, and, having determined their rank or class in order of merit, to recommend awards accordingly. The recommendations were then reported to the department jury of the department in which the group belonged, whose duty it was to review the reports, to harmonize differences between the recommendations of the several group juries, and to make them conform to the rules and regulations of the exposition. After being approved or changed by the department jury, the recommendations for award were certified to the superior jury, which was given power to "determine finally and fully the awards to be made." Provision was made for notice to exhibitors of their awards, for their protests in writing setting forth their grounds of dissatisfaction, and for decision thereof by the superior jury. What a group jury and a department jury did was merely advisory. It was the superior jury that made awards and determined controversies about them.

Borden's Company, the complainant, entered in group 85 exhibits of its condensed milk, evaporated cream, and malted milk as animal food products. It may be assumed that it duly asked an award for the exhibit as a collective one. It is certain that it applied for a separate award for each kind of product. Horlick's Food Company entered its malted milk in group 87 as a farinaceous product. Both brands of malted milk, Borden's and Horlick's, might properly have been entered in either group. They were similar in composition and commercially competitive. The superior jury made the Borden's Company the following awards: On condensed milk a grand prize, on evaporated cream a gold medal, and on malted milk a silver medal— all in group 85. It awarded the Horlick's Company a gold medal on malted milk in group 87. The complaint of the Borden's Company is twofold: It says it either had or is entitled to a grand prize on its exhibit considered as a collective one, and it asks that one be established by decree of court. It also says that the plan of the exposition contemplated competition between exhibitors, the determination by juries of the comparative excellence of competing articles, and the making of awards accordingly; also that its malted milk in group 85 and Horlick's malted milk in group 87 were examined by different group juries, thereby ignoring the basic rule of competition, and that a higher award to Horlick's Company indicates to the world a greater merit, and is therefore unjust and injuriously affects the value of its product. In this connection the Borden's Company seeks a decree annulling its own award on malted milk and enjoining the publication thereof.

The claim for an award of a grand prize for a collective exhibit cannot be sustained. Though the group jury recommended one, it conclusively appears that the superior jury never made such an award. Whether this was due to the fact that the recommendation was never before the superior jury, or to the position of that jury that the rules and regulations of the exposition prohibited such an award, is immaterial. There was no award by the specially constituted board which alone had authority, and a court cannot, in a case like this, assume its functions and decree one. Nor can the Exposition Company be compelled to change its records relating to the awards for exhibits of malted milk, or be enjoined from publishing the true purport of its proceedings. It is true the malted milk of Borden's Company and that of Horlick's Company were examined by different group juries; but that fact, indicating the absence of individual competition in the examination, must have been known to the department jury when it acted on the recommendations, and also to the superior jury when it made the awards. Moreover, Borden's Company made specific complaint in writing of this very matter to the superior jury, as it was authorized to do by the rules and regulations of the exposition; but, notwithstanding the complaint, the original awards were adhered to. When we refer to the superior jury, we include the committee upon which the powers of that jury devolved after its dissolution. In the scheme of the exposition, to which the Borden's Company consented when it entered its exhibits, the superior jury was the tribunal of last resort, in the absence of recognized grounds for interference by a court of equity. Power to determine awards finally and fully was given it. There were provisions for notice to the exhibitors and for a hearing of complaints. Notice was given, complaint made, and hearing had, and the decision was adverse to complainant. Courts of equity will grant relief in cases of fraud, accident, or mistake from the awards, reports, and acts of special tribunals, whether created by law or by the convention of the parties; but we can discover no such grounds here. The final decision of the superior jury proceeded upon a full knowledge and consideration of the essential facts. It was not the result of misapprehension of conditions. In their brief counsel charge fraud on the part of certain exposition officials. The bill contains no averments of fraud sufficiently direct and particular to invite an issue; but it is proper to say that we think the evidence discloses no ground whatever for the imputation. The matters to which attention is directed are consistent with the utmost honesty and good faith, and that they occurred is not surprising, considering the complicated details of procedure and the immense amount of labor connected with an exposition of that magnitude.

It may be said, in conclusion, that the view prevailed with the superior jury that the competition contemplated in the plan of the exposition was primarily with fixed standards, and not a competition of each exhibit with its commercial competitor, though it does not clearly appear that this was the moving reason for the final result.

The decree is affirmed.